456

No. 23248.

EUGENE EDWARD ARELLANO *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(484 P.2d 801)

Decided May 10, 1971.

Edward H. Sherman, Public Defender in and for the City and County of Denver, Truman E. Coles, Public Defender, David G. Manter, Assistant, Robert T. Burns, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, James F. Pamp, Assistant, Aurel M. Kelly, Assistant, for defendant in error.

*In Department.*

458

Opinion by CLIFFORD H. DARROW, District Judge.*

EUGENE EDWARD ARELLANO, the defendant below, was convicted of assault with a deadly weapon and sentenced to the penitentiary.

He claims on this writ of error that manifest prejudicial error occurred during his trial which requires a reversal of the conviction.

Briefly, his assertions of error may be classified as follows: (1) that the verdict of the jury was contrary to law and the evidence; (2) denial of a continuance; (3) denial of his motion for a directed verdict of acquittal; (4) the giving, and refusal to give, certain instructions.

Counsel for Arellano in this Court were not his counsel at the trial.

We do not agree with the assertions of error.

■ [1] This Court has repeatedly held that alleged error shall be particularly specified and that a general specification will not be considered on review.

■ We will, however, take notice of any serious prejudicial error shown by the record in criminal cases (which we do not find here) and order a new trial or take such other action as might be appropriate to insure a just result. Procedural technicalities in criminal cases should not be the rule of the day. But an accused cannot wilfully disregard the well-established rules of procedure and expect us to come to the rescue. He, as well as the People, must be held to responsibility, else the administration of the criminal law would become unstable.

■ Thus, the allegation that "the verdict was contrary to the evidence and contrary to the law" presents nothing for us to review and is insufficient. Citation of authority would be redundant.

■ [2] The denial of a continuance was proper.

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.

Arellano's counsel was present when the case was set for trial. No objection was made to the trial setting. At the commencement of the trial to the jury, counsel's law partner appeared and conducted the *voir dire* examination on Arellano's behalf. After that, regular counsel took charge of and managed the defense to the conclusion of the case.

We doubt whether counsel for Arellano have much faith in their contention that the proceedings for impaneling the jury were prejudicial to him. To say the least, no prejudice is shown in the record.

But counsel urge that Arellano was forced into trial before locating all his witnesses. He did not testify nor did he produce any evidence.

At the conclusion of the people's case and in the trial court's chambers, the following took place:

"Mr. Zuckerman: We'd like to rest at this time, but we'd also like first that the exhibits be shown to the jury and, secondly, Mr. Arellano is here in chambers with me at this time we will be prepared to rest; however, I want the record to reflect that I have advised Mr. Arellano that he has the right to take the stand in his own behalf but that I had advised him under the circumstances that I felt it best that he not take the stand and it is his wish and desire not to take the stand, is that correct?

Defendant Arellano: That's true."

The trial had been set for more than thirty days before counsel for Arellano moved for a continuance. The motion was orally made on the first day of the trial and renewed on the next day.

No motion for a continuance supported by affidavits, or otherwise, was filed during the thirty-day interval between the trial setting and trial date. To the contrary, defense counsel wrote to Arellano informing him of the date of trial.

The bare statement is made that Arellano might have been able to find witnesses, by sight, who are difficult

to run down, whom he claims might have been of material assistance to him. Counsel stated during the motions "[T]hey (the witnesses) have names — just first names, and names that aren't available in the telephone directory or otherwise."

Arellano has not stated the first name of any alleged witness or his place of residence, nor the efforts or inquiries, if any, which were made to locate any witness, nor any facts sufficient to require the trial judge, in his sound judicial discretion to have granted a continuance. There is nothing which amounts to reasonable grounds for believing that the evidence (concerning the subject of "provocation") of any unnamed witness could ever be made available or would have been admissible at the trial. There is a complete lack of that degree of diligence which is demanded by law to justify the court in delaying the cause. Delays in these circumstances cannot be sustained on either principle or authority; and, if they could, the results would be detrimental to the public interest. In many instances delays of that kind would interfere with the prompt dispatch of business in the various courts, tend to prolong the trial of criminal cases, and unnecessarily add materially to the expense of proper operation of the court system.

 Arellano was not entitled to a directed verdict of acquittal.

 There is sufficient competent evidence tending to show that in the evening of February 25, 1967, Arellano as a patron of the Bongo-Bongo Club on Curtis Street in Denver had an argument, first, with a female employee, and then with Richard Lohman, the owner. He had been drinking alcoholic drinks at the bar. Lohman "walked" him out of the bar and a passing police car stopped, picked him up and drove away.

Arellano had used obscene language and threatened "to get all three of you." [Lohman, his partner Stephen Mantelli and Mantelli's father].

At approximately 2:00 a.m. the next day, Lohman

closed the Bongo-Bongo for the night and immediately walked to his car in a parking lot close by. As he turned the corner, walking, Arellano was there and struck him in the mouth with something he had in his hand. It was a hard blow. Lohman testified that after he was struck he saw a gun in Arellano's hand.

Arellano then held Lohman at gun point and made him get into his [Lohman's] car and detained him, mouth bleeding, for half an hour with the gun, hammer back, pointed at Lohman's chest.

The blow to Lohman's mouth caused a "stillate laceration" which was treated and sutured that same early morning by Dr. Raymond C. Jess, a staff member at General Rose Hospital.

With that evidence before the jury, the denial by the trial judge of Arellano's motion for an acquittal was entirely proper.

█ Complaint is made that the trial court delivered to the jury instructions covering the law of both "general intent" and "specific intent" which, it is argued, were incompatible and cause for confusion by the jury.

█ Counsel ignore the fact that the trial judge submitted to the jury not only the alleged principal offense but also simple assault as a lesser included offense. This was not error. Plainly, an instruction on general intent was necessary for simple assault. It was also necessary for the Court to instruct on specific intent for the charge of assault with a deadly weapon. *Carnes v. People,* 171 Colo. 301, 466 P.2d 918; *Gonzales v. People,* 166 Colo. 557, 445 P.2d 74, and cases therein cited.

We find no merit to objections and exceptions concerning other instructions in the case.

The judgment is affirmed.

MR. JUSTICE GROVES, MR. JUSTICE ERICKSON, and MARVIN W. FOOTE, District Judge* concur.

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.