## No. 10,084.

### BERSHENYI v. THE PEOPLE.

#### Decided June 5, 1922.

Plaintiff in error was convicted of murder in the first degree.

### *Reversed.*

1.  CRIMINAL LAW—*Evidence—Uncommunicated Threats.* In a homicide case, evidence of statements of the deceased, made within a very recent time before the killing, and tending to show an attitude of hostility towards defendant, is competent. The fact that such statements were in the nature of threats which were uncommunicated to the defendant did not make them inadmissible.

2.  *Intent of Defendant—Evidence.* In a homicide case, the exclusion of defendant's testimony as to his intent in striking deceased, is prejudicial error.

3.  *Instructions—Erroneous.* In a homicide case where defendant attempted to justify his act under the doctrine of self defense, it was error to instruct the jury, "that no provocation will justify a person in killing another, nor will it excuse him", the effect being to withdraw his defense from the jury.

4.  *Instructions—Inconsistent.* Where inconsistent statements of law are made in instructions, it is impossible to tell which the jury followed, and in as much as it might have followed the wrong one, such instructions constitute prejudicial error.

5.      *Evidence—Rebuttal.* The admission of improper evidence on
        rebuttal which was likely to prejudice the jury against the
        defendant, held error.

*Error to the District Court of Garfield County, Hon. John
T. Shumate, Judge.*

Mr. C. W. DARROW, Messrs. NOONAN & NOONAN, for
plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES
H. SHERRICK, assistant, for the people.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

PLAINTIFF in error was convicted of murder in the first
degree, and brings error. He will hereinafter be men-
tioned as defendant.

He was convicted of killing one Page in an altercation
in the streets of Glenwood Springs where defendant was
delivering milk. Page had recently been in his employ,
and on the day in question went into the street, where
defendant stood by the side of his truck, and demanded a
small balance of wages. The only witness testifying as to
what was said was the defendant himself. Other wit-
nesses testified to the fact that there was something of an
altercation, and that the defendant struck Page with a
club taken from his truck, from which assault Page died
some weeks later. Defendant claims that he acted in self-
defense, testifying that during the conversation, in which
Page recited a series of grievances against the defendant,
Page had in his hand an open knife; that finally he lunged
at defendant with the knife, and that the fatal blow was
struck as a result of that attempt by Page to cut defend-
ant.

There was testimony by a witness, who assisted in stop-
ping the fight, to the effect that defendant at the time ex-
claimed that Page had tried to cut him.

One of the errors assigned is that the court excluded
the offered testimony of three witnesses to the effect that

Page, between February 1st and February 8th, the date of the assault, had expressed great hostility to the defendant, and had stated that he would be justified in killing him if he wanted to. This testimony was excluded upon the theory that it was offered as a threat, and the fact that it had not been communicated to defendant was made the ground of its exclusion. Counsel for defendant explained in making the offers that the purpose of the testimony was to show a state of mind in Page, which would tend to corroborate the testimony of the defendant that Page had assaulted him with a knife. The rejection of the testimony was error. Its admissibility is clear under the rule laid down in *Davidson v. The People,* 4 Colo. 145, where the court quotes from Wharton's Criminal Law as follows:

"Where the question is as to what was deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to defendant. The evidence is not relevant to show the *quo animo* of the defendant, but it may be relevant to show that at the time of the meeting the deceased was seeking the defendant's life."

The fact that the statements made by deceased were not, strictly speaking, threats, is not material, the question being what was his attitude of mind. These statements, offered to be proved, had all been made within a week, and they therefore come within the rule that such evidence must concern the feeling of the party within a very recent time. The fact that he made hostile statements to three different persons during that week tends strongly to show how he felt toward the defendant.

It is further assigned as error that the court sustained an objection to a question to the defendant as to his intent when he struck Page. Under the authorities, the exclusion of that testimony was error.

In Wharton's Criminal Evidence, section 431, it is said: "Ordinarily, as shown elsewhere, a witness cannot be

examined as to another person's motives, but as to the accused's own motives, when relevant, he may be examined in chief, or upon cross-examination. In proving self-defense, he is entitled to testify to the jury, that, at the time of the act charged, he believed himself to be in danger of his life * * *." While such answers are not conclusive, they cannot be ignored, but must be considered in connection with all other evidence in the case. Where an instruction requires the jury to ignore such statements it is error. The inference which the jury may draw from the accused's own statement may be strong enough to overcome the conclusion drawn from other acts and declarations."

The evidence was admissible under *B. & W. R. D. Co. v. L. C. D. & R. Co.*, 36 Colo. 455, 86 Pac. 101, where the question of the admissibility of evidence of intention was directly under consideration. That case was followed in *Minneapolis Steel Co. v. Yeggy*, 69 Colo. 313, 194 Pac. 362.

The more serious objection, however, is to instruction No. 17 in which the jury was instructed, that—

"The law in relation to provocation is that no provocation will justify a person in killing another, nor will it excuse him; hence killing upon provocation will be either murder or manslaughter according to the degree of provocation and its effect upon the person killing."

It is urged that the use of the word "provocation" is so broad as to eliminate all consideration of the defendant's defense that he acted because of the attack upon him by the deceased. That the statement was too general is clear from the case of *Murphy v. The People,* 9 Colo. 435, 13 Pac. 528, in which provocation sufficient to free the party killing from the guilt of murder was discussed. It is there said:

"Provocations, unaccompanied by personal assault, were not infrequently recognized as sufficient."

Mr. Wharton was there quoted as follows:

"The line between those provocations which will and

will not extenuate the offense cannot be certainly defined. Such provocations as are in themselves calculated to provoke a high degree of resentment, and ordinarily induce a great degree of violence when compared with those which are slight and trivial and from which a great degree of violence does not usually follow, may serve to mark the distinction."

To the defendant, relying upon his plea of self-defense, the question of provocation was vital. When, then, the jury was told that no provocation would justify a killing, nor excuse it, the effect was to withdraw his defense from consideration by the jury. The discussion in other parts of that instruction of what would, and what would not, reduce the killing from one grade of offense to another, does not cure the error. This court has held that where inconsistent statements of the law are made it is impossible to tell which one the jury followed, and inasmuch as it might follow the wrong one, such instructions are prejudicial error.

It is also urged that Mrs. Page, on rebuttal, testified that when she was riding into Glenwood Springs with the defendant, he attempted some familiarities with her. Objection is made that this is not rebuttal. The objection is good. The state had offered no evidence as to any improper conduct of the defendant toward Mrs. Page. Defendant had related a conversation between him and Page concerning such a charge, and the only thing which the state could do in rebuttal was to show that defendant's evidence as to that conversation was not true. After defendant's case was closed, to introduce evidence of misconduct on the part of the defendant was likely to prejudice the jury against him.

That Page was killed by the defendant in a fit of rage was clearly established. Whether or not the circumstances under which the killing occurred were such as to have, to any extent, excused the killing was the question to be determined. Upon that question the defendant was prejudiced by the rejection of evidence, and the admission of

evidence as above stated, as well as by the instructions of the court. For these reasons the judgment should be reversed.

MR. JUSTICE BURKE concurs in the judgment of reversal on the sole ground that there is error in instruction No. 17.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE CAMPBELL not participating.